**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Misha Leshchiner, individually and on behalf of all others similarly situated, | 1:22-cv-03464 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Kellogg Sales Company, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      Kellogg Sales Company ("Defendant") manufactures, markets, labels and sells cranberry almond chewy nut bars depicted with pictures of whole almonds and cranberries under the Special K brand ("Product").



2.      The labeling is misleading because it gives consumers the impression it has a greater absolute and relative amount of cranberries and almonds than it does.

3.      Almonds and cranberries are valued by consumers because they are rich in nutrients not available from other foods of their type.

## I.      INCREASED POPULARITY OF ALMONDS

4.      Americans' almond consumption has grown several hundred percent in the past two decades, overtaking peanuts as the most consumed nut.[1]

5.      One of the reasons is because almonds contain "healthy fats," which science and nutrition have concluded are beneficial to health.

6.      Almonds are a good source of protein, which studies show contributes to decline in overall mortality and improvement of heart health.

7.      A handful of almonds contains roughly 10 percent of the recommended intakes for protein and fiber, and macronutrients such as vitamins and minerals.

8.      Almonds are widely considered the gold standard by many nutrition experts.

9.      One prominent consultant declared that "Almonds are better [than other nuts] due to their greater percentage of minerals, vitamin E and phytonutrients," with "[fewer] calories, more fiber and a better glycemic score than peanuts making them better for weight loss, diabetics and sustained energy throughout the day."

10.      Companies have responded to consumer demand and growing evidence of benefits of almonds by making them the key ingredients in packaged foods.[2]

---

[1] Roberto A. Ferdman The rise of the American almond craze in one nutty chart, Washington Post, Aug. 6, 2014. The Peanut Board has questioned the statistics used to conclude almond consumption exceeds peanuts.

[2] Jill Russell Qualizza, Almonds Win 2013 Popularity Contest, Nov. 5, 2013; Joshua Minchin, Why are Consumers and Manufacturers Choosing Almonds, New Food, Feb. 18, 2022.

11.     Consumers associate almonds with health over other nut varieties.

12.     Almonds are the most expensive nut, several times more expensive than peanuts.

13.     Consumers are willing to pay more for products with almonds based on these factors.

## II.     POPULARITY OF CRANBERRIES

14.     The past two decades have seen an increase in consumer consumption of cranberries, classified as a "superfruit" by nutrition experts, due to the high antioxidant content.

15.     Cranberries are very high in antioxidants, compounds that reduce free radicals and contribute to prevention of chronic diseases such as cardiovascular disease.

16.     One of these is Vitamin E, an essential fat-soluble vitamin which plays a role in skin and hair health.

17.     Other antioxidants in cranberries include quercetin, myricetin, peonidin, ursolic acid, and A-type proanthocyanidins, or tannins.

18.     Proanthocyanidins are proven to prevent urinary tract infections ("UTIs").

19.     Cranberries contain a relatively greater amount of polyphenols than other fruits.

20.     Studies indicate these bioactive plant compounds have numerous health benefits, such as promoting circulation, improving blood pressure, and maintaining cardiovascular health.

21.     Cranberries are a good source of fiber, with 4.6 grams per cup, which is beneficial to digestive health.

22.     Based on having fewer calories and carbohydrates, and more fiber, consumers are increasingly choosing cranberries over raisins.

23.     Though cranberries are more expensive than raisins, consumers are willing to pay higher prices due to the numerous benefits this fruit provides.

### III. "CRANBERRY ALMOND – CHEWY NUT BAR" MISLEADS CONSUMERS

24.   The front label representations of "Cranberry Almond – Chewy Nut Bars," pictures of whole cranberries and almonds, and picture of the bar are misleading because (1) the amount of cranberry ingredients is almost equivalent to the amount of raisin ingredients and (2) the amount of peanut ingredients exceeds the amount of almond ingredients.

25.   The ingredient list shows peanuts are the first ingredient, while almonds are listed fifth, after raisins and corn syrup.

Ingredients: Peanuts, dried cranberries (cranberries, sugar, vegetable glycerin), raisins, corn syrup, almonds, sugar, whole grain oats, crisp rice (rice flour, sugar, salt), date paste, fructose, toasted coconut (coconut, sugar, dextrose, salt).
Contains 2% or less of palm oil, vegetable glycerin, salt, soy lecithin, rosemary extract for freshness, soy protein isolate, nonfat milk.

26.   The front label fails to show pictures of peanuts and shows only almonds as a visible nut ingredient in the bar, noticeable by their shape and brown skin.

27.   In other countries, Defendant sells a near-identical version of the Product where the front label contains pictures of peanuts in addition to almonds.

28.   Based on laboratory analysis and/or review of the Product's formulation, the approximate percentage of the Product that is peanuts is 20%, while almonds are 9%.

29.   While dried cranberries are listed second, ahead of raisins, the amount of these two ingredients is approximately the same.

30.     This is based upon laboratory analysis and/or review of the Product's formulation, which reveal that if cranberries constitute 15% of the Product, raisins constitute 14%.

31.     The front label does not contain pictures of raisins next to cranberries nor contain the word "raisin."

32.     The picture of the bar on the label does not visibly reveal any fruit component other than cranberries.

33.     The Product's name of "Cranberry Almond – Chewy Nut Bar" is misleading because it gives the impression of a greater relative and absolute amount of cranberries and almonds.

34.     The name does not comply with federal and identical state requirements that foods be given  a "common or usual name" that is truthful and not misleading. 21 C.F.R. § 102.5(a).

35.     A common or usual name must "identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a).

36.     Where the characterizing ingredients (1) have a material bearing on the food's price or its acceptance by consumers or (2) creates an erroneous impression they are present in a greater amount than it is, the common or usual name should include these percentages or otherwise inform consumers. 21 C.F.R. § 102.5(b).

37.     The label could have stated, "Contains _____ % Cranberry [and] Contains _____ % Almonds" beneath "Chewy Nut Bars," or disclosed the use of raisins and peanuts on the front label. 21 C.F.R. § 102.5(b)(2).

38.     The name, "Cranberry and Almond – Chewy Nut Bars," does not tell consumers the Product contains a significantly greater relative amount of peanuts and raisins compared to almonds and cranberries.

39.     While consumers will see the words "Chewy Nut Bars" below "Cranberry and Almond" and may expect other nut ingredients, they will not expect other nuts to be present in an amount greater than the highlighted ingredient of almonds.

40.     The name, "Cranberry and Almond – Chewy Nut Bars" does not tell consumers that the Product contains an approximately equivalent amount of cranberries and raisins.

41.     The Product substitutes lower valued peanuts and raisins for higher valued almonds and cranberries.

## IV.   CONCLUSION

42.     Defendant makes other representations and omissions with respect to the Product which are false and misleading.

43.     Reasonable consumers must and do rely on a company to honestly and lawfully market and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

44.     The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

45.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

46.     Had Plaintiff known the truth, he would not have bought the Product or would have paid less for it.

47.     As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $4.89 for 6 bars (198g), excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

48.     Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C.

§ 1332(d)(2).

49.     The aggregate amount in controversy exceeds $5 million, including any statutory and

punitive damages, exclusive of interest and costs.

50.     Plaintiff Misha Leshchiner is a citizen of Illinois.

51.     Defendant Kellogg Sales Company is a Delaware corporation with a principal place

of business in Battle Creek, Calhoun County, Michigan.

52.     The class of persons Plaintiff seeks to represent includes persons who are citizens of

different states from which Defendant is a citizen.

53.     The members of the class Plaintiff seeks to represent are more than 100, because the

Product has been sold with the representations described here for several years, in thousands of

locations across the States covered by Plaintiff's proposed classes.

54.     The Product is available to consumers from grocery stores, dollar stores, warehouse

club stores, drug stores, convenience stores, big box stores, and online

55.     Venue is in the Eastern Division in this District because a substantial part of the

events or omissions giving rise to these claims occurred in Lake County, including Plaintiff's

purchase, consumption, transactions and/or use of the Product and awareness and/or experiences

of and with the issues described here.

<u>Parties</u>

56.     Plaintiff Misha Leshchiner is a citizen of Vernon Hills, Lake County, Illinois.

57.     Defendant Kellogg Sales Company is a Delaware corporation with a principal place

of business in Battle Creek, Michigan, Calhoun County.

58.   Kellogg's is one of the largest food manufacturers in the world.

59.   Kellogg's founding was based upon its desire to improve the health of medical patients, leading to the innovative corn flakes cereal.

60.   The original founder, W.K. Kellogg, believed that a food's ingredients determined its quality, and always prioritized transparency and honesty to his customers.

61.   For over a hundred years, American families have trusted Kellogg's products, which have become part of the fabric of American life.

62.   The Product is sold in boxes containing various numbers of bars, and individually.

63.   Plaintiff purchased the Product at locations including Target, 1400 E Lake Cook Rd, Wheeling, IL 60090, between December 21, 2021 and April 21, 2022, among other times.

64.   Plaintiff believed and expected the Product had a greater relative and absolute amount of almonds and cranberries relative to other fruits and nuts because that is what the representations and omissions said and implied, on the front label and/or the absence of any references or statements elsewhere on the Product.

65.   Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, hang tags, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

66.   Plaintiff bought the Product at or exceeding the above-referenced price.

67.   Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

68.   Plaintiff chose between Defendant's Product and products represented similarly, but

which did not misrepresent their attributes, requirements, instructions, features, and/or components.

69.     The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

70.     Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

71.     Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar fruit and nut bars, because he is unsure whether those representations are truthful.

<u>Class Allegations</u>

72.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Arkansas, South Carolina, Montana, Mississippi, Alaska, Virginia, Louisiana, and Oklahoma who purchased the Product during the statutes of limitations for each cause of action alleged.

73.     Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

74.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

75.     Plaintiff is an adequate representative because his interests do not conflict with other members.

9

76. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

77. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

78. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

79. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

80. Plaintiff incorporates by reference all preceding paragraphs.

81. Plaintiff believed the Product had a greater relative and absolute amount of almonds and cranberries relative to other fruits and nuts.

82. Defendant's false, misleading and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

83. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

84. Plaintiff relied on the representations and omissions to believe the Product had a greater relative and absolute amount of almonds and cranberries relative to other fruits and nuts.

85. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

86.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

87.     The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

88.     Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct.

89.     As a result of Defendant's use of artifice, and unfair or deceptive acts or business practices, the members of the Consumer Fraud Multi-State Class sustained damages.

90.     Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breaches of Express Warranty,
Implied Warranty of Merchantability/Fitness for a Particular Purpose
and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

91.     The Product was manufactured, identified, marketed and sold by Defendant and expressly and impliedly warranted to Plaintiff that it had a greater relative and absolute amount of almonds and cranberries relative to other fruits and nuts.

92.     Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

93.     Defendant knew the product attributes that potential customers like Plaintiff were

11

seeking and developed its marketing and labeling to directly meet those needs and desires.

94. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant that it had a greater relative and absolute amount of almonds and cranberries relative to other fruits and nuts.

95. Defendant's representations affirmed and promised that the Product had a greater relative and absolute amount of almonds and cranberries relative to other fruits and nuts.

96. Defendant described the Product so Plaintiff believed it had a greater relative and absolute amount of almonds and cranberries relative to other fruits and nuts, which became part of the basis of the bargain that it would conform to its affirmations and promises.

97. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

98. This duty is based on Defendant's outsized role in the market for this type of Product, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

99. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

100. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

101. Plaintiff hereby provides notice to Defendant that it breached the express and implied warranties associated with the Product.

102. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

103. The Product did not conform to its affirmations of fact and promises due to

12

Defendant's actions.

104. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label, because it was marketed as if it had a greater relative and absolute amount of almonds and cranberries relative to other fruits and nuts.

105. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it had a greater relative and absolute amount of almonds and cranberries relative to other fruits and nuts, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

106. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

107. Defendant had a duty to truthfully represent the Product, which it breached.

108. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted company, known for its transparent labeling, and its commitment to putting customers first.

109. Defendant's representations and omissions regarding the Product went beyond the specific representations on the packaging, as they incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for.

110. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

111. The representations took advantage of consumers' cognitive shortcuts made at the

point-of-sale and their trust in Defendant.

112. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

113. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

114. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it had a greater relative and absolute amount of almonds and cranberries relative to other fruits and nuts.

115. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

116. Defendant knew of the issues described here yet did not address them.

117. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

118. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   July 4, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com